# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 5646 | **DATE** | 8/30/2000 |
| **CASE TITLE** | U.S.A. ex rel Larry Hayes vs. James K. Williams et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Larry Hayes petition for a writ of habeas corpus, supplemental petition for a writ of habeas corpus [1-1], second supplemental petition for a writ of habeas corpus [9-1], third supplemental petition for a writ of habeas corpus, fourth supplemental petition for a writ of habeas corpus [59-1], and motion for summary judgment are [60-1,2] denied. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 0 6 2000 date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |

SEP 0 5 2000 date mailed notice

ED-7 FILED FOR DOCKETING 00 SEP -5 AM 8: 22

Document Number 62

TSA courtroom deputy's initials

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel. )
LARRY HAYES, a/k/a Larry Cole, )
)
                Petitioner, )
)           Case No. 96 C 5646
      v. )
)           Judge Wayne R. Andersen
JAMES K. WILLIAMS, Chairman of the )
Illinois Prisoner Review Board, RICHARD )
D. McVICAR, Warden of the Shawnee )
Correctional Center, and JAMES RYAN, )
Attorney General of the State of Illinois )
)
         Respondents. )

DOCKETED
SEP 06 2000

## MEMORANDUM OPINION AND ORDER

      This case is before the court on a writ for a petition of habeas corpus brought by

petitioner Larry Hayes. Hayes filed several supplemental petitions, a memoranda of law in

support of his petitions, and a motion for summary judgement. In his filings, Hayes alleges that

he has been denied Due Process while seeking parole in violation of 28 U.S.C. §§ 2241 and

2254. For the reasons discussed below, Hayes' petitions and motion for summary judgment are

denied.

## BACKGROUND

I.     Conviction and Post-Conviction Proceedings

      After a jury trial, Larry Hayes was convicted of murder and sentenced to 75 to 100 years

in prison. The following are the fact as set forth by the court in his direct appeal to the Appellate

62

Court of Illinois. <u>People v. Larry Hayes et al.</u>, 70 Ill. App. 3d 811, 388 N.E.2d 818 (Ill. App. 1

Dist. 1979). We accord a presumption of correctness to these state court factual findings. 28

U.S.C. § 2254(d).

     Patrice Freeman, who was thirteen at the time of the incident in this case, testified that at around midnight on May 16, 1975, she was on an elevator with her friend Joanne Jones, at 5201 South Federal, a high-rise public housing project. The elevator failed to stop on the fourth floor, where Freeman lived, and despite her efforts it did not stop until it reached the fifteenth floor. They got off the elevator and began walking down the staircase to Freeman's apartment.

     When they arrived at the fifth floor, they saw George Wormley, whom Freeman had known for about three years, standing about eighty feet from the laundry room on the fifth floor. Jones asked Wormley where she could find Larry Hayes, her boyfriend. He told her that Hayes had gone home. After he had said this, Hayes, whom Freeman had known for about a year, came walking down a large hallway. Wormley asked Jones to get a knife for him, but she refused and told him that she was staying with Hayes. He then asked Freeman to get the knife. When she asked him why he wanted the knife, he told her not to worry about it.

     Freeman went to apartment 701 and asked a person named Wardell if she could use his knife. She told him that Wormley wanted to use it. When she went into his kitchen, he told her to bring the knife back. She took two knives which she described as "silver and curled at the end." She said that they were not sharp and were blunted at the end.

     After she had obtained the knives, Freeman went back to the fifth floor. When she arrived, she saw Wormley, Hayes, and Edward Murphy, whom she had known for about three years. She noticed blood on their clothes and she testified that she thought that she saw blood on Wormley's shoes. She gave the knives to Wormley and asked him what he intended to do. He told her that they were "trying to kill a Stone." When he said that, she asked for the knives back because she did not want to get involved. However, Wormley said nothing. She then asked to see the boy before they did anything. She went into the laundry room with Jones and saw the boy, later identified as Stanley Beck, lying face down on the floor. She said he was bloody and was naked from the waist down except for a sock which he was wearing. While she was there, the boy did not move or say anything, and she said that he "looked dead." While she was in the laundry room, Wormley, Hayes, and Murphy were outside, about six feet away from the door.

     After seeing the boy, Freeman and Jones ran down to the fourth floor. Freeman could not get in to her apartment, so she and Jones went out onto the porch area of the fourth floor. There they saw a boy talking to Freeman's aunt. Freeman told the boy that "they" were going to kill somebody. She refused to

2

identify the boy at trial, but she did say that her aunt heard her tell the boy about the killing. She stated that even though she knew a number of people in the building, she did not ask anyone to call the police. She said that she and Jones remained on the porch for about 15 minutes and then began walking upstairs.

When they reached the sixth floor, Freeman and Jones heard Wormley, Hayes and Murphy talking. They first saw them on the porch area outside apartment 610. One of them told Freeman and Jones not to say anything about what had happened. At some point, Hayes and Wormley tried to hand the knives back to Freeman, but she refused to accept them. She said that the knives had blood on them. After she entered the apartment, one of them again told her not to say anything about what had happened. She said that she thinks that it was Hayes. She noticed that the three of them had changed most of their clothes and thought that they had taken off their shirts. She also noticed that both Wormley and Murphy were wearing the same kind of gym shoes which they were wearing when she had seen them on the fifth floor. She remained in the apartment for about five minutes and then left with Jones.

Freeman walked with Jones to her apartment at 5135 South Federal. When they arrived at the building, they met a boyfriend of Freeman's mother. He told Freeman to go back to the building. When she returned to 5201 South Federal she saw her stepfather and mother but did not tell them what had happened. Also, she said that she did not call the police.

On May 18, 1975, Freeman first spoke to the police in her apartment in the presence of her mother, aunt, and friends. At the time, she told the police that she did not know anything about the boy in the laundry room. When asked if she ever had occasion to learn that her brother had been arrested and questioned about killing the boy in the laundry, she answered that she had not.

About a week after the incident, Freeman began a series of four or five visits to the police station. Upon separate questioning by counsel for each defendant, she testified to different dates for some of the visits, but consistently testified that she had given two written statements to the police. She said that in each instance she was called to come over to the station by the police, and, although she traveled to the station on her own, after each visit the police drove her home. Her mother was with her on all but one of the visit and whenever she was asked to give a written statement, her mother was present. Each visit began in the early or midafternoon and most visits lasted for at least four hours.

Freeman told the counsel for Hayes that she went to the police station on May 24, 1975, but that she did not tell the police anything about what had happened. She said that while she was there the police were mean to her and were yelling at her. They told her that they had a witness who said that she had borrowed two knives from him on the night that the boy was killed. They also told her that they could charge her with murder. She said that she was frightened and that she lied to the police because she was afraid of getting hurt. On redirect

3

examination, she testified that she was afraid that she was going to be hurt by friends of Wormley, Murphy, and Hayes.

Freeman told counsel for Hayes that about four days after the first visit, she returned to the police station. Two of the police officers who questioned her on this occasion were Investigators Kehoe and Kennedy. She told them that she did not know anything about what had happened in the laundry room. They yelled at her and once again she was told that she could be charged with murder unless she told the truth. She gave them a written statement which made no mention of any involvement by Hayes in the events of May 16-May 17. After this visit, she returned to the police station on two or three other occasions.

Freeman also told the counsel for Hayes that she was called to testify before a grand jury in June of 1975. Prior to her appearance, she was taken into a small room where Investigator Kehoe again yelled at her. She then testified before the grand jury. When she came out of the grand jury room, Kehoe tried to serve her with a subpoena for her appearance at the trial of this case. She refused to accept the subpoena. After her refusal, there was more yelling and, eventually, Kehoe pushed her brother. She said that she agreed to testify only after the assistant State's Attorney agreed to move her mother out of the building at 5201 South Federal.

Freeman told counsel for Wormley that her first visit to the police station occurred about a week after she had seen the boy in the laundry room. She said that Investigators Kehoe and Kennedy questioned her in a small room for a number of hours. She said that she was afraid while she was being questioned because she "had to go home."

Freeman told counsel for Wormley that her next visit occurred around a week later. During that visit, she gave a written statement to the police. The statement essentially included the matters testified to at trial by her. However, in that statement, she omitted mentioning anything about Hayes, her visit to apartment 610, or her seeing her stepfather on May 16 or May 17. She also stated that she had taken only one knife out of Wardell Robinson's apartment. She said that the police were not mean to her after she had given this statement. She testified that the statement was not the truth. On her third visit, which occurred more than three days after the second visit she was asked to give another statement because the police did not believe that she told the truth in her first statement. This time she mentioned Hayes involvement in the incident.

Freeman told counsel for Murphy that on May 24, 1975, the date of her first written statement, she told the police what she thought would get her out of the police station. She said that both she and her mother signed the statement. When she went home that night she told her stepfather that she had not told the police the truth, but he did not call the police and tell them that.

On May 27, she went back to the police station and told the police that the first written statement was not the truth. During this visit, she was questioned by Kehoe and Kennedy with her mother and boyfriend present. While she gave her

second statement one of the officers typed it up. Then the officers read it back to her. She said that she had trusted that the officers had typed up what she had said. Both she and her mother signed the statement. In this statement, she stated that "King" had sent for the knife and that she had brought the knife to him. She said that "King" was Larry Hayes. She testified that this was untrue. In her statement, she also stated that after he had received the knives, King said that he was going to kill "this fellow." She testified that she could not remember if that was true. When asked by Murphy's counsel whether she recalled testifying before the grand jury that she gave the knife to Larry, she said that she could not remember.

Linda Burnett testified that she lived in apartment 1202 at 5201 South Federal on May 16 and May 17, 1975. At around midnight on May 16, she arrived home with a number of her friends whom she did not wish to identify at trial. She said that she saw Patrice Freeman and some of her friends on the first floor of the building. Since both elevators were broken, Burnett and her friends had to walk up to her apartment. When they arrived on the sixth floor, they rested. While there, they saw a couple of people, including George Wormley and Edward Murphy. At first, she testified that she did not notice anything special about their clothes. However, upon further questioning by the assistant State's Attorney, she said, "I could have seen dirt spots, I could see dirt spots, I don't know what kind of spots you want for me to say." On cross-examination, she stated that the spots were larger than quarters and, although she first indicated that she could not say whether she saw more than one spot, she subsequently stated that the spots were on more than one area of their clothing.

About a half hour later, Burnett heard a lot of noise on the fifth floor and she went down to see what was the cause of the commotion. When she arrived, she saw Wormley and Murphy standing by the elevators. The elevators were located just across from the laundry room. She also said that there could have been five more people on the fifth floor. They were standing apart, about 10 to 15 paces from Wormley and Murphy. She said that neither Wormley nor Murphy was doing anything unusual. One of them had a knife, but she though that they were just playing around. When asked what type of shoes they were wearing, she said that they "could have been wearing gym shoes, could have been [wearing] shoes." After about 10 minutes, she left the fifth floor.

About four days later, Burnett was called to the police station to give a statement. She could not remember if the date of this visit was May 28, 1975, but she did not say that she had only been to the police station on one occasion. She arrived at 8 or 8:30 p.m. and was questioned by Investigators Kehoe and Kennedy concerning the events of the night of May 16-17. Among other things, she told the investigators that she had not seen Larry Hayes on the night in question. She said that they tried to get her to change this statement, but she never changed the statement. One of the investigators typed up her statement and only one half hour after she had arrived, she signed it. She did not read the statement because she "believed that what [she] * * * was saying was typed down." After she had given

her statement, she was kept in the police station until 1 or 2 a.m. During that time, the investigators repeatedly told her that she would be jailed until the trial unless she told them that she had seen Hayes. She testified that she never told them that she had seen Hayes on that night.

Eric Rogers testified that he was a schoolmate of Stanley Beck. He said that Beck was 14 years old on May 16, 1975, and he lived at 101st Street and Malta. He said that Beck's mother lived in the vicinity of 52nd Street and Federal. He had previously been in that vicinity with Beck. At around 11:30 p.m. on May 16, he was waiting with Beck for a northbound bus at 99th Street and Vincennes. Eventually, he left Beck at the bus stop and went home. It was stipulated that Rogers would identify the People's Exhibit No. 5 as a photograph of Beck.

Essie Beck testified that she was Stanley Beck's mother. On May 16 and 17, she was living at 5201 South Federal. On May 21, she heard about Stanley from either her daughter or her sister.

Officer Richard Thompson, a mobile lab technician, testified that at approximately 2:25 p.m. on May 18, 1975, he went to the fifth floor laundry room at 5201 South Federal. The laundry room was divided into three cubicles and, as far as he could remember there was a light in the room. He found Stanley Beck's body in the south cubicle. Although the cubicles were divided by metal mesh partitions, the body was visible from the doorway. When he saw the body, it was in a state of decomposition. Thompson said that the victim was lying face forward in some garbage and burned debris. There was some burned garbage on top of the victim's stomach. There were blood spatterings on the floor and wall around the body. Also, Thompson stated that he saw a shoe, stocking, beer can, and length of wire on the floor near the victim. No weapons were found at the scene.

Thompson photographed the scene. He took a photograph of a shoe print which had been made in the blood. He described the print as "gymshoe type," but stated that it was possible that other types of shoes could have left a similar impression. He measured the footprint with a scale but not with a "rule." He also attempted to take fingerprints but he was unable to find any suitable prints in the cubicle.

Joseph Claparols, a pathologist employed by the Coroner of Cook County testified that he performed an autopsy on Stanley Beck on May 19, 1975. His external examination revealed that Beck had been dead for a period of time. Although his report, signed on June 5, indicated that the date of death was May 18, 1975, he said that he did not independently determine that date but was given the time when the victim was pronounced dead.

Claparols noted that the victim had suffered extensive burns to the portions of his body and a number of severe lacerations and abrasions to the face, scalp, abdomen, scrotum, and perineum. He characterized many of the lacerations as "stab-like wounds." Two of the lacerations to the head caused fractures.

6

Claparols stated that the fracture to the left eye region "could be associated with a perforating wound into the eye socket region," whereas, the fracture to the back of the head could be associated with a blunt instrument. Claparols testified further that the types of injuries which he observed would give rise to substantial bleeding. Also, he stated that wounds inflicted before death practically always evidence vital changes such as hemorrhaging.

Claparols' internal examination revealed several rib fractures. He also said that the skull evidenced wounds consistent with those found on the external examination. When asked for his opinion on the cause of death, he stated that the cause was craniocerebral injury, extreme.

At the close of the State's case, several exhibits were admitted into evidence. Also, it was stipulated that each defendant was 17 when arrested on May 28, 1975.

The defense only called two witnesses. Linda Burnett, called on behalf of defendant Hayes, was shown a statement which she identified as the one which she signed for the police on May 28, 1975. She said that it was unusual that the statement mentioned Larry Hayes since she had not said anything about him to the police. She said that she had specifically told Investigators Kehoe and Kennedy that she had not seen Hayes on the night of May 16-May 17. She also stated that although the statement mentioned blood, she had never mentioned blood to the police or said that she had seen blood on Murphy and Wormley.

Eddie Freeman, Patrice Freeman's brother, was called on behalf of defendant Hayes but refused to comment on any of the questions asked him.

At the close of the defense case, it was stipulated that on May 24, 1975, various items of clothing, including two pairs of gym shoes, were taken from Wormley and Murphy and tested for the presence of blood. The tests proved to be negative.

On direct appeal, Hayes argued that: (1) the state failed to prove the defendants guilty of murder beyond a reasonable doubt because the case was based on circumstantial evidence, the state failed to call Investigators Kehoe and Kennedy, and the state failed to prove how Stanley Beck got to 5201 South Federal; (2) the trial court judge committed error by threatening Linda Burnett and intimidating her while she testified; (3) the trial court judge committed error by admitting into evidence photographs of the murder scene; (4) the jury saw photographs which the trial court judge ruled inadmissible; (5) the defendants were denied a fair trial when the assistant

State's Attorney assumed facts not in evidence during his rebuttal argument; (6) the trial court judge's admonition compounded the error involving the assistant State's Attorney's statements; and (7) the sentence of 75 to 100 years was excessive.

The Appellate Court affirmed the verdict. People v. Hayes, 70 Ill. App. 3d 811, 388 N.E.2d 818 (1st Dist. 1979). Hayes was denied leave to appeal to the Illinois Supreme Court.

On January 25, 1982, Hayes filed a petition for post-conviction relief. In the petition, he argued that he had received ineffective assistance of counsel at trial. Hayes stated that he instructed his attorney to call more witnesses, informed his attorney that he was willing to testify, and informed his attorney that other persons had experienced harassment at the hands of Investigators Kehoe and Kennedy. Hayes attached the affidavit of Eddie Freeman. In the affidavit, Freeman stated that he did not testify because he thought his sister would be charged with a crime. The petition was dismissed by the Cook County Circuit Court Judge.

Hayes appealed the dismissal of his post-conviction petition. His appellate counsel filed a motion for leave to withdraw on the grounds that there were no meritorious issues citing Anders v. California, 386 U.S. 738 (1967). Notice of the motion was sent to Hayes. In response, Hayes stated that the original petition should have been amended, but he failed to state the appropriate amendments. The Appellate Court of Illinois granted the motion to withdraw and affirmed the dismissal of the petition. Hayes did not appeal the decision of the Appellate Court.

On March 29, 1985, Hayes filed a second petition for post-conviction relief. In his second petition, Hayes added the affidavit of Dwayne Triggs. Triggs stated that he "had intimate relations with Patrice Freeman," and that she told him that she had to send the defendants to jail to make the police and her mother leave her alone. Triggs alleged that Freeman stated that one of

8

the convicted defendants was innocent, however, Freeman did not specify which defendant was innocent. Hayes second petition was dismissed based on res judicata.

Hayes appealed the denial of his second post-conviction petition. His appellate counsel again filed a motion for leave to withdraw. A copy was sent to defendant, but Hayes did not respond. The Appellate Court granted the motion to withdraw and affirmed the Circuit Court because the Appellate Court found no issues of arguable merit. Hayes did not appeal this decision to the Supreme Court of Illinois.

On May 28, 1993, Hayes filed his third post-conviction petition. He alleged that: (1) he was denied due process, equal protection and fundamental fairness due to ineffective assistance of counsel, because the indictment was secured through perjured testimony, the accountability instruction to the jury allowed for conviction even though no evidence showed Hayes' role in the offense, his conviction was based on the perjured testimony of Patrice Freeman, counsel choose not to call available alibi witnesses because he thought that the state had not met its burden, and his attorney intimidated him and argued with him; (2) his rights were violated on direct appeal because his ineffective counsel ignored requests to raise a claim of ineffective assistance of trial counsel and failed to question trial counsel; (3) his rights were violated on his first petition for post-conviction relief because the appointed attorney did not inform him of his intention to withdraw, the attorney failed to answer the motion to dismiss, made no effort to amend the petition, and failed to contact trial counsel; (4) his rights were violated when counsel withdrew on the appeal of his first post-conviction petition; (5) his rights were violated when his first post-conviction petition was dismissed because Hayes was not informed; and (6) his rights were violated when his attorney withdrew from the appeal of his second post-conviction proceeding.

9

On September 6, 1995, the Court granted the State's motion to dismiss petitioner's third post-conviction petition. Hayes appealed the dismissal to the Appellate Court of Illinois. On May 24, 1996, the Appellate Court affirmed the dismissal and again allowed appellate counsel to withdraw. Hayes petition for rehearing was denied by the Appellate Court on October 31, 1996.

On January 8, 1997, Hayes filed a petition for leave to appeal to the Supreme Court of Illinois. Hayes argued that he was deprived of Due Process, Equal Protection and fundamental fairness in violation of the Fourteenth Amendment and the Illinois Constitution because: (1) he was deprived of the right to the appointment of counsel other than a public defender; (2) he was subjected to ineffective assistance of counsel; (3) he was deprived of the right to transcripts and a continuance; and (4) he suffered a substantial deprivation of rights and requested that the Supreme Court reverse and remand the trial court's dismissal of his third post-conviction petition. On April 2, 1997, the Supreme Court denied Hayes' petition for leave to appeal.

II.     Parole Board Proceedings

Hayes also participated in several lawsuits against the Illinois Prisoner Review Board ("PRB"). After filing for parole ten times and requesting rehearings after every denial, Hayes filed for mandamus complaining about the reliance of the PRB on the statement of the case drafted by the assistant State's Attorney. After a defendant is convicted, section 5-4-1(d) of the Unified Code of Corrections charges the State's Attorney with drafting a statement of the case which describes the crimes committed by the defendant. Ill. Rev. Stat. 1989, ch. 38, par. 1005-4-1-(d). Hayes complained that the PRB's reliance on the statement of the case denied him Due Process. In March of 1992, the Prisoner Review Board's motion to dismiss was granted.

10

Hayes appealed. He raised the issues of: (1) whether mandamus was properly filed and appropriate; (2) the extent to which the denial of fundamental fairness was due to the Prisoner Review Board's reliance on erroneous information underlying the description of the offense; (3) whether unconstitutional denials of parole were due to the PRB's use of erroneous information pertinent to defendant's conduct within the Illinois Department of Corrections; (4) whether denials of parole were unconstitutional given the PRB's manufacturing of boiler plate reasons to deny parole; and (5) that he was denied due process at his hearing before the PRB.

The Appellate Court denied the mandamus remedy. Hayes v. Prisoner Review Board, No. 5-92-0220 (5th Dist. 1992). The Court noted that Illinois courts had declined to determine whether Illinois' parole release statute created a protectable liberty interest and a right to Due Process. The Appellate Court found that Hayes had the opportunity to dispute irregularities. Therefore, even if the Illinois statute created a protectable liberty interest, Hayes received appropriate protections. Hayes did not appeal this decision.

Hayes was a named plaintiff in Dennis E. et al v. O'Malley. The class action complaint alleged that State's Attorney did not comply with the provisions of section 5-4-1(d) of the Unified Code of Correction, which requires that the State's Attorney prepare a statement describing the crimes committed by all defendants who are placed in the custody of the Illinois Department of Corrections. The class alleged that the State's Attorney encouraged his assistants to prepare erroneous and exaggerated statements of the defendants character. The plaintiffs sought mandamus against the State's Attorney to compel the promulgation of a policy to write accurate and objective statements for future convicted individuals and to remedy past violations of the act.

11

The class also alleged that the Clerk of the Circuit Court of Cook County promulgated an office-wide policy which resulted in failing to transmit to recently convicted individuals the statements of their cases. Plaintiffs sought mandamus to compel the Clerk's office to implement a new policy to transmit the statements to recently convicted individuals within 10 days of receipt and to rectify the failure of the Clerk's office to transmit statements to previously convicted individuals.

Defendants, in a motion to dismiss, argued that the complaint failed to state a cause of action. The Circuit Court of Cook County granted defendants' motion to dismiss. Plaintiffs appealed the decision of the Circuit Court.

The Appellate Court found that the statute should not be read to proscribe the State's Attorney's discretion in drafting the statements. Dennis E. et al v. O'Malley, 256 Ill. App. 3d 334, 353 (1st Dist. 1993). The court found that there was no legally cognizable right to an objective statement of the case, and therefore, that it was impossible to grant a mandamus remedy. However, the court reversed the Circuit Court decision in favor of the Clerk of the Circuit Court, noting that the Clerk's office has a duty to transmit the statements under section 5-4-1(d). The Appellate Court remanded the portion of the complaint that made allegations against the Clerk of the Circuit Court of Cook County.

III.    Previous Federal Habeas Proceedings

In 1993, Hayes filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. In the petition, Hayes alleged that: (1) his rights under the Fifth, Sixth and Fourteenth Amendments were violated when the prosecution knowingly used perjured testimony, the accountability jury instructions denied him a fair trial, trial counsel failed to call an alibi witness, appellate counsel

failed to argue that trial counsel provided ineffective assistance, post-conviction counsel failed to properly investigate two witnesses, appellate post conviction counsel failed to investigate and amend his petition, second post-conviction counsel failed to properly investigate, and second post-conviction appellate counsel failed to argue that the other post-conviction counsel provided ineffective assistance; (2) Patrice Freeman's statements were taken in violation of the Fifth Amendment because she was coerced and not advised of her rights; (3) his arrest was in violation of the Fourth Amendment because he was arrested on the basis of Patrice Freeman's statements; (4) he was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to call an alibi witness, failed to file a timely motion to suppress Patrice Freeman's statements, and failed to file a motion to quash his arrest; (5) his Fourteenth Amendment rights to the effective assistance of counsel was denied because appellate counsel failed to research the record and raise the issues in numbers 2-4 above; (6) on direct appeal from the dismissal of his first post-conviction petition he was denied his Fourteenth Amendment rights to the effective assistance of appellate counsel when counsel failed to argue that prior post-conviction counsel was ineffective; (7) the state failed to prove the defendants guilty beyond a reasonable doubt; (8) the trial court judge committed reversible error by threatening a prosecution witness; (9) the trial court judge erred in admitting into evidence photographs of the murder scene; (10) he was denied a fair trial when members of the jury saw inadmissible photographs; (11) he was denied a fair trial when the assistant State's Attorney assumed facts not in evidence during rebuttal argument; and (12) his sentence was excessive.

Hayes petition was denied on August 15, 1994. Hayes v. McVicar, 1994 U.S. Dist. Lexis 11483 (N.D.Ill. 1994). The court found that only two of the issues Hayes presented on direct

appeal, insufficiency of the evidence and the jury seeing inadmissible photographs, were presented to the Supreme Court of Illinois. Because the District Court can only entertain arguments that were presented to the Supreme Court of Illinois, the Court only substantively analyzed the those two issues. The District Court found that Patrice Freeman's testimony was sufficient to support guilt beyond a reasonable doubt and that her credibility was an issue for the jury. The District Court also found that the jury seeing photographs of the murder victim was an issue of state law and not an appropriate basis for habeas relief. The District Court held, that even if the issue were proper for habeas review, the photographs were not prejudicial enough to deny Hayes his right to a fair trial.

Hayes filed a notice of appeal, but the certificate of probable cause was denied because he had made no substantial showing of the denial of a federal right.

Hayes filed a second petition for a writ of habeas corpus under 28 U.S.C. § 2254. In the petition he alleged that: (1) his arrest, indictment, conviction and sentence were secured in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments because the assistant State's Attorney knowingly used false and coerced perjured statements and testimony at trial; (2) the conviction and sentence were secured by improper prejudicial misconduct of the trial court judge, prosecutors and defense attorneys; (3) his conviction, arrest, sentence and indictment were secured due to ineffective assistance of trial counsel when counsel failed to represent Hayes or prepare a defense; (4) he was deprived the effective assistance of appellate counsel on direct appeal when counsel failed to raise meritorious issues; and (5) his rights were violated because of the unreasonably deficient performance and representation of counsel in all proceedings on petitioner's state petitions for post-conviction relief.

On August 12, 1997, we dismissed the case for lack of jurisdiction. We found that the petition was successive. Because Hayes failed to obtain leave of the Seventh Circuit to file a second habeas corpus petition, we had no jurisdiction to consider the renewed application. Hayes did not appeal our decision.

IV.     The Instant Petition for a Writ of Habeas Corpus

On September 5, 1996, Hayes filed the instant petition for a writ of habeas corpus citing 28 U.S.C. §§ 2241 and 2254. In the petition, he alleged that: (1) the activities of the State's Attorney's office in preparing the statement of the case for use by the PRB constituted prosecutorial misconduct; (2) the State's Attorney's office and the PRB abused their discretion and authority by arbitrarily denying him parole; (3) the PRB violated his Fourteenth Amendment rights by using boiler-plate cursory denials of parole, discriminated against him because he committed murder, transformed the hearings into adversarial proceedings, deprived him of access to his files or reasonably priced copies, subjected him to en banc hearings involving the entire PRB, predetermined their decision to deny his parole, granted parole at a faster rate to persons over 40 years old or to Caucasians, showed bias against Hayes, denied Hayes parole for false arbitrary insufficient and capricious reasons under the guise of perfunctory cursory boiler-plate language, and failed to abide by state statutes and administrative codes governing the parole process; and (4) the actions of the PRB establish grounds for recusal and it was an error for them to refuse to recuse themselves.

On March 24, 1997, we summarily dismissed the petition for a writ of habeas corpus without prejudice because petitioner had failed to exhaust state court remedies. Hayes filed a

15

motion for reconsideration. On August 29, 1997, we granted Hayes' motion for reconsideration, because we found that Hayes had exhausted his state court remedies.

Respondents filed a motion to dismiss the petition as a successive petition. On March 17, 1998, we denied respondents' motion to dismiss. We found that the petition was not successive because the instant petition is properly construed as seeking relief under the provisions of 28 U.S.C. § 2241, not section 2254. Section 2241 contemplates relief for constitutional violations that occur after the underlying trial.

Petitioner has filed a number of supplemental petitions. In his first supplemental petition, he alleged bias and prejudice in his March 18, 1997 parole hearing. Hayes alleged that the Board violated the First, Eighth and Fourteenth Amendments when they denied his parole request.

In his second supplemental petition, Hayes alleged that he was attacked by a correctional officer and that officers then created a false report charging him with assault. Hayes alleged that the Adjustment Committee denied him a fair hearing and disciplined him. He was punished with six months in C grade status, 3 months of segregation placement, and a transfer to a maximum security prison. Hayes also alleged that: (1) the PRB deliberately delayed his parole decision by awaiting the results of his grievance; (2) the delay constituted an unauthorized delegation of authority and power to the Illinois Department of Corrections; (3) others who committed more serious infractions were granted parole; (4) the PRB relied on the statement of the case issued by the assistant State's Attorney; (5) the PRB wrongly made guilt determinations that violated his protections against double jeopardy; (6) the PRB erroneously alleged the fact that Hayes was working in the law library as a paralegal to deny him parole; (7) the PRB erroneously used the rationale that Hayes desired to reside with his wife in Chicago to deny him parole; (8) the PRB

16

refused Hayes access to his files; (9) the PRB required him to be subject to an en banc parole hearing; and (10) the PRB is biased against Hayes.

Hayes then filed a memorandum of law in support of his petition for a writ of habeas corpus. In the memorandum, Hayes admitted that his trial and conviction were constitutional, but he argued that the statement of the case proffered by the assistant State's Attorney was unconstitutional. Hayes argued that: (1) his state law claims should be considered exhausted because Illinois courts cannot or will not afford him an effective and adequate remedy; (2) Illinois statute 730 ILCS 5/5-4-1(d) creates a Constitutionally protectable liberty interest right in parole and that his right to Due Process has been violated; (3) prosecutorial misconduct, abuse of authority and discretion interfered with the fairness of his hearings before the PRB; and (4) his habeas claims state causes of action against the PRB.

On May 21, 1999, Hayes filed his third supplemental petition for a federal writ of habeas corpus. In the third supplemental petition, Hayes alleged that: (1) he has been denied access to his files; (2) that the PRB, in denying his parole in March of 1999, considered and relied on false and erroneous information in his disciplinary record; (3) the PRB relied of the false statement of the case supplied by the assistant State's Attorney; (4) the members of the PRB have refused his request that they recuse themselves from making his parole determination; (5) his hearing was compromised by noise in the interview room; (6) the process of interviewing candidates for parole left the decision to one member of the PRB and the rest of the PRB merely adopted his conclusion through generalizations; (7) the PRB delayed revealing its rationale for denying parole until it was aware that this Court would not rule in favor of Hayes on motions that may

entitle him to summary judgment; (8) the PRB treated him differently than other similarly situated prisoners; and (9) he could not receive a fair hearing from the PRB.

On April 26, 2000, Hayes filed his fourth supplemental petition for a writ of habeas corpus. In the fourth petition, Hayes alleged that: (1) a PRB member stated that Hayes "would have to figure out a way to get a fair parole hearing" and left the room in order to let Hayes reflect on how to get a fair hearing; (2) the PRB's rationale for denying parole in March of 2000 falsely claimed that Hayes shot two Chicago police officers; (3) the PRB subjected him to suffer disparate treatment in the parole process in violation of the First, Eighth and Fourteenth Amendments.

On June 26, 2000, Hayes filed a motion for summary judgment, or in the alternative, for partial summary judgment and a memorandum of law in support of his motion. In the memorandum, Hayes argued that: (1) the Clerk of the Circuit Court of Cook County withheld and delayed transmitting to him a timely copy of "Official Statement of Facts" in violation of state law and the Fourteenth Amendment, (2) the Board deprived him of access to his files, and its decisions denied parole in violation of their own state laws and administrative codes and the Fourteenth Amendment's Due Process and Equal Protection Clauses, (3) the above actions violated his First and Fourteenth Amendment Rights to timely seek available relief, and (4) the Board, in violation of state laws, rules, administrative codes, and the First, Fifth and Fourteenth Amendments deprived him of Due Process and Equal Protection in the parole process.

# DISCUSSION

Judicial review pursuant to 28 U.S.C. § 2241 provides the appropriate mechanism for a prisoner to seek relief from constitutional violations that occur after the underlying trial, such as improper conditions of confinement. Newlin v. Helmin, 123 F.3d 429, 437 (7th Cir. 1997), rev'd on other grounds, Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000). Section 2254, on the other hands, is the proper vehicle for attacking the validity of a conviction and sentence. Carnine v. U.S., 974 F.2d 924, 927 (7th Cir. 1992). Under Section 2241, we can only issue a writ if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

We must determine whether the issues in Hayes' petition are properly before this Court. A petitioner must exhaust available state court remedies as to any of his federal claims. Coleman v. Thompson, 501 U.S. 722, 731 (1991). We cannot address an issue that the state court has declined to address on the basis of an independent and adequate state ground. Id. at 729-30. Finally, claims raised for the first time at the federal level are procedurally defaulted and cannot be reviewed in this court. Rodriguez v. Peters, 63 F.3d 546 (7th Cir. 1995).

Virtually all of Hayes' allegations arise from his dealings with the Illinois Prisoner Review Board. Hayes contends that he has been denied Due Process in several different ways by the PRB. The Seventh Circuit, without the benefit of a holding by the Supreme Court of Illinois, originally ruled that Illinois' parole release statute created a protectable liberty interest. Scott v. Illinois Parole and Pardon Bd., 669 F.2d 1185 (7th Cir. 1982). The Supreme Court of Illinois, however, explicitly analyzed the issue in Hanrahan v. Williams, 174 Ill.2d 268, 220 Ill. Dec. 339, 673 N.E.2d 251 (Ill. 1996). The Supreme Court of Illinois noted the Scott decision, but

determined that the PRB's decision to grant or deny parole is completely discretionary outside of the few instances when the denial of parole is mandatory. Id. at 255. As the Seventh Circuit recognized in Heidelberg v. Illinois Prisoner Review Board et al., we are bound to follow the interpretation of the Supreme Court of Illinois of its own state law. Heidelberg, 163 F.3d 1025, 1027(7th Cir. 1998). Therefore, the Illinois' parole release statute does not create a protectable liberty interest. Id. Hayes, therefore, cannot complain in a petition for a writ of habeas corpus in federal court about the denial of his Due Process rights because no Constitutional rights are implicated by Illinois' parole hearings.

I.     Petition for Writ of Habeas Corpus

A.     State's Attorney's Statement of the Case

Hayes alleged that his rights were violated when the assistant State's Attorney submitted a statement of the case to the Illinois Prisoner Review Board. The Government argues that this claim has been procedurally defaulted because Hayes presented it, in the form of a request for mandamus, to the state court and the case was dismissed because it did not state a cognizable cause of action. In Dennis E. v. O'Malley, the Court found that "the newly convicted individuals from Cook County have no legally recognizable right to what they deem to be an objective statement, and, since a clear right must be asserted in order to state a case for mandamus, it would be impossible for them to allege any facts which would entitle them to such relief." Dennis E., 256 Ill. App. 3d at 345.

The Government may be correct and Hayes may have procedurally defaulted on his claim here, but we do not need to determine whether a failure to meet the stringent standards accompanying a request for mandamus relief renders a petition procedurally defaulted. Given

the complexity of determining whether Hayes is procedurally barred, we will rule on the substance of this issue. Howard v. O'Sullivan, 185 F.3d 721, 724 (7th Cir. 1999). The fact that the Illinois Supreme Court and the Seventh Circuit have ruled that there is no protected liberty interest in the Illinois parole statute is dispositive here. Hanrahan, 174 Ill.2d 268; Heidelberg, 163 F.3d at 1027. Since there is no protected liberty or due process interest in the Illinois parole statute, "contentions of procedural irregularities are therefore irrelevant." Hanrahan v. Williams, 2000 WL 876910, * 3 (N.D. Ill. 2000). Therefore, those irregularities cannot form the basis for granting habeas relief because Hayes is not being held in custody in violation of his constitutional rights.

B.    Abuse of discretion by the State's Attorney's office and the PRB

Hayes also alleged that the PRB and State's Attorney's office abused their discretion by arbitrarily denying him parole. Hayes argues that the PRB's reliance on the statement of the case issued by the State's Attorney's office is a denial of his right to Due Process. As noted above, there is no Due Process right implicated in the Illinois parole statute. Therefore, Hayes is not entitled to habeas relief on this claim.

C.    PRB's violation of Hayes' right to a fair hearing

Hayes contended that the PRB: (1) arbitrarily denied him parole on the basis of the statement of the case, (2) discriminated against him because he committed murder, (3) transformed his hearings into adversarial proceedings by questioning him about his innocence or guilt, (4) deprived him of access to files or reasonably priced copies, (5) subjected him to en banc hearings involving the entire PRB, (6) predetermined their decision to deny his parole, (7) granted parole at a faster rate to persons over 40 years old or to Caucasians, (8) exhibited bias

21

against Hayes, (9) denied parole for false and capricious reasons which are embodied in "cursory and boilerplate language," (10) arbitrarily set higher standards for Petitioner to overcome to reach parole; and (11) failed to abide by state statutes and administrative codes.

Several of the above claims are procedurally defaulted. Claims 2, 4, 6, 7, and 11 were not raised by Hayes in any form before a state court. Claims raised for the first time at the federal level are procedurally defaulted and cannot be reviewed in this court. Rodriguez, 63 F.3d 546. Claim 7 could be a proper basis for habeas relief if it had been properly presented to the state court, but Hayes has procedurally defaulted. Hanrahan, 175 F.3d at 1020.

Furthermore, Hayes other allegations cannot form the basis for habeas relief. As noted above, there is no liberty interest created by the Illinois parole release statute. Therefore, claims 1, 2, 3, 4, 5, 6, 8, 9 and 10 cannot be the basis for habeas relief. Claim 11 is that the PRB's activities violate Illinois law. That contention cannot be considered by a federal court as a basis for habeas relief. Id. Therefore, Hayes' arguments do not justify a writ of habeas corpus.

D.    The PRB refused to recuse itself

Hayes contends that the PRB abused its authority when it refused to comply with his request that it recuse itself from further proceedings. This allegation is procedurally defaulted because Hayes failed to present it to any state court. Rodriguez, 63 F.3d at 546. Furthermore, since there is no constitutionally protected liberty interest in parole, Hayes cannot use this argument as the basis for habeas relief.

22

II.     First Supplemental Petition

In his first supplemental petition, Hayes alleged bias and prejudice in his March 18, 1997, parole hearing.  Since there is no constitutionally protectable liberty interest in the Illinois parole statute, this petition cannot form the basis for habeas relief.

III.    Second Supplemental Petition

A.      False report charging him with assault

Hayes alleges that on November 9, 1997, he was awakened and assaulted by a Shawnee Correctional Center officer.  After the assault, Hayes alleged that correctional officers conspired to place him in disciplinary segregation based on false charges.  He also alleged that the adjustment committee ignored his request to call witnesses during the disciplinary hearing and found him guilty.  He was punished with 6 months of C-grade status, three months of segregation, and a transfer to a maximum security prison.  Hayes filed a grievance concerning the events and alleges that the grievance was denied for insufficient reasons.  Hayes also alleges that the disciplinary action resulted in a denial of parole.

Hayes has not alleged that he has pursued all administrative remedies or fairly presented the issues involved in his second supplemental petition for a writ of habeas corpus to the state courts.  Bocian v. Godinez, 101 F.3d 465, 468 (7th Cir. 1996), Hogan v. McBride, 74 F.3d 144, 146 (7th Cir. 1996).  Since Hayes' change of confinement and allegations of unfair process are entirely distinct from the claims he previously presented to the state courts, he cannot look to this court for relief before allowing the state courts to have a fair opportunity to rule on the issues.  Jones v. Washington, 15 F.3d 671, 675 (7th Cir.) cert. denied, 512 U.S. 1241 (1994).

Even if this claim were properly before us, however, it is unlikely that Hayes would qualify for a writ. "The right to litigate disciplinary confinements has become vanishingly small." Wagner v. Hanks, 128 F.3d 1173, 1175 (7th Cir. 1997). Prison discipline is only actionable in federal courts when it takes the form of prolonging the prisoner's incarceration or otherwise depriving him of what has been held to be liberty or property within the meaning of the due process clause. Id. at 1176. Since we have already determined that Hayes has no protected liberty interest in his parole, the fact that the disciplinary procedure may have hurt his chances for parole is not relevant to determining whether he qualifies for a writ of habeas corpus. Thus, because Hayes' only actionable complaint is based on his transfer to a maximum security prison, he could not be entitled to parole.

B.    PRB's denial of parole

Hayes made several allegations arguing that the PRB violated his rights by denying him parole. Because Illinois' parole statute offers no protected liberty interest, this claim is not actionable.

IV.    Memorandum of Law in Support of Hayes Petition

A.    Hayes' State Law Claims Should be Considered Exhausted

Hayes argued that, for the purpose of the instant petitions, his state law claims should be considered exhausted because Illinois courts cannot or will not afford him an effective and adequate remedy. We have not declined to rule on any of Hayes' claims based on his failure to exhaust state remedies. We denied the claims in his second supplemental petition because Hayes failed to fairly present the issues to the state court, not because he has failed to exhaust state remedies. Therefore, Hayes' argument here is irrelevant to the rest of our holding.

24

If Hayes is attempting here to show cause and prejudice for his default, however, he fails to convince this Court. A default on a procedural hurdle may be excused if a petitioner can establish cause and prejudice that would excuse the default or, alternatively, establish that he fits within the miscarriage of justice exception to the cause and prejudice rule. Coleman, 501 U.S. at 750-51; Wainwright v. Sykes, 433 U.S. 72, 87 (1977).

The Supreme Court has interpreted "cause" to be something external to the petitioner which is both beyond his control and which cannot be fairly attributed to him. Murray v. Carrier, 477 U.S. 478, 488 (1986)("we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."). Having reviewed Hayes' memorandum, we conclude that he could have presented these arguments to the Illinois courts just as he presented his arguments to this Court. He is arguing that the state courts would not grant him relief, not that he was in some external manner prevented from presenting his arguments to the state courts. Therefore, we will not excuse petitioner's procedural default.

Hayes' final opportunity to overcome his procedural default is to show that his allegations fit within the "miscarriage of justice" exception to the cause and prejudice standard. This exception is limited to those extraordinary cases in which petitioner is actually innocent of the crime for which he is imprisoned. Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1996). Therefore, it requires a colorable claim of actual innocence, as opposed to legal innocence, coupled with an allegation of a constitutional wrong. Sawyer v. Whitley, 505 U.S. 333, 339-40, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Although Hayes formerly presented claims of innocence, those claims are not related to the substance of the petition before this court.

Furthermore, in his memorandum of law in support of his petition for a writ of habeas corpus, Hayes admits that his prosecution and sentencing were constitutional. Therefore, his claims do not trigger the "miscarriage of justice" exception.

B.    Illinois Statute 730 ILCS 5/5-4-1(d) creates a liberty interest in parole

Hayes argued that he has a constitutionally protectable liberty interest in parole and that his constitutional rights have been infringed by a denial of due process in his hearings before the PRB. As we noted above, this question has been conclusively settled by the Illinois Supreme Court and the Seventh Circuit. Hanrahan, 174 Ill.2d 268; Heidelberg, 163, F.2d at 1027. Illinois' parole release statute does not create a protectable liberty interest. Therefore, Hayes has no recourse in federal court for alleged improprieties in the parole process that do not violate other Constitutional rights.

C.    Prosecutorial misconduct interferes with the fairness of his hearings

Hayes reiterates his argument that the State's Attorney's office engaged in misconduct and abuses of authority and discretion when it submitted the statement of the case to the PRB. As we noted above, this claim is not actionable here.

D.    Hayes' habeas states a cause of action against the board

Hayes asks that we liberally construe his petition, because he is pro se. We have construed his several petitions liberally. Even when he has failed to use the correct language or legal theory we have attempted to interpret his allegations in a manner which states a cause of action. Haines v. Kerner, 404 U.S. 519, 520 (1972); Woods v. Thieret, 903 F.2d 1080, 1082 (7th Cir. 1990). However, Hayes allegations are not sufficient to justify an evidentiary hearing because he has no constitutionally protectable liberty interest in the parole process.

V.    Third Supplemental Petition for a Writ of Habeas Corpus

Hayes contended that: (1) the PRB has unreasonably denied him access to his files, (2) the PRB relied on false and erroneous information about his disciplinary record to deny his parole in March of 1999, (3) the PRB relied on the false statement of the case supplied by the assistant State's Attorney, (4) all of the members of the PRB refused his request that they recuse themselves, (5) his hearing was compromised by the noise in the interview room, (6) the process of interviewing candidates for parole leaves the decision in the hands of one member, (7) the PRB delayed revealing its rationale until it were aware this court would not rule in his favor, (8) the PRB treats him differently than other similarly situated inmates, and (9) he cannot receive a fair hearing from the PRB.

We have already analyzed and denied claims 1, 3, 4, 8 and 9.  Claims 2, 5,  6 and 7 are denied because Hayes has no protectable liberty interest in the parole process.   Furthermore, even if Hayes' allegations had substantive merit, he has failed to present any of the issues regarding his March 1999 parole hearing to the state courts and has procedurally defaulted on those claims.

VI.    Fourth Supplemental Petition for a Writ of Habeas Corpus

In his fourth supplemental petition, Hayes alleges that (1) a board member stated to Hayes that he "would have to figure out a way to get a fair parole hearing" and left the room in order to allow Hayes to reflect on how to get a fair hearing, (2) the PRB's rationale for denying parole falsely claims that Hayes shot two Chicago police officers, and (3) the PRB subjects him to suffer disparate treatment in the parole process in violation of the First, Eighth and Fourteenth

Amendments. Because Hayes has no protectable liberty interest in the parole process, he has no recourse in this court for allegations that he was denied due process in the parole hearing.

VII.    Motion for Summary Judgment

Hayes motion for summary judgment is denied for the reasons stated above. In the memorandum in support of summary judgment Hayes presents only one issue that we did not analyze above. Hayes argues that the Clerk of the Cook County Circuit Court violated his rights by failing to forward a copy of the "Official Statement of Facts" to him on a timely basis. First, Hayes has failed to name the Clerk as a defendant in this habeas. Second, <u>Dennis E. et al. v. O'Malley</u>, 256 Ill. App.3d at 345 is res judicata. Third, Hayes admits that he received the Official Statement of Facts in 1994. Therefore, Hayes is suffering from no continuing harm. Hayes cannot petition this court for habeas relief based on the Clerk's failure to transmit an official statement of the case.

## CONCLUSION

Larry Hayes petition for a writ of habeas corpus, supplemental petition for a writ of habeas corpus, second supplemental petition for a writ of habeas corpus, third supplemental petition for a writ of habeas corpus, fourth supplemental petition for a writ of habeas corpus, and motion for summary judgment are denied. This case is terminated.

Wayne R. Andersen
United States District Judge

Dated: _August 30, 2000_

28